**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| ERIC HODGSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action File No.: |
| v. | ) | |
| | ) | _____ |
| BOARD OF REGENTS OF THE | ) | **JURY TRIAL DEMANDED** |
| UNIVERSITY SYSTEM OF GEORGIA, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## COMPLAINT

Plaintiff Eric Hodgson ("Plaintiff" or "Hodgson") hereby files this Complaint against Defendant Board of Regents of the University System of Georgia ("Defendant" or the "Board"), alleging as follows:

## INTRODUCTION

This action arises out of Defendant's discriminatory refusal to hire Hodgson as the Head Coach of the Women's Golf Team at Kennesaw State University ("KSU") based on his gender. Hodgson served as the Interim Women's Golf Head Coach from January 2021 through May 2021, and his season culminated in his team winning the Conference Tournament and setting a new school record. During the interview process for the new permanent Head Coach, a member of the decisional

team commented that they were hiring for "a women's team and it needs a woman coach," or words to a similar effect. Despite his proven track record of success and demonstrably good relationship with the women's golf team, KSU ultimately followed through on its stated goal and hired a female for the position. Hodgson brings claims of gender-based discrimination pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. et seq. ("Title VII") and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Hodgson seeks injunctive and equitable relief, back pay and compensatory damages to remedy these civil rights violations.

## PARTIES

1.     Plaintiff Eric Hodgson is a resident of Cobb County, Georgia.

2.     Defendant Board of Regents of the University System of Georgia is the governing authority over higher education in Georgia. Defendant transacts business in the Northern District of Georgia.

3.     Defendant Board is subject to the Court's jurisdiction and may be served with process at 270 Washington Street, SW, Atlanta, GA 30334.

4.     At all times material to this Complaint, Defendant Board was Plaintiff's employer, and Plaintiff was the Board's employee, within the meaning of Title VII.

## JURISDICTION AND VENUE

5.      Plaintiff brings this action pursuant to Title VII.

6.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights).

7.      The unlawful violations of Plaintiff's civil rights were committed within the Northern District of Georgia. Venue is proper in this Court under 28 U.S.C. § U.S.C. § 1391(b), and 42 U.S.C. § 2000e-5(f)(3) as every act of which Plaintiff complains occurred in the Atlanta Division of the United States District Court for the Northern District of Georgia.

## ADMINISTRATIVE PROCEEDINGS

8.      Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission on September 2, 2021, based on sex discrimination.

9.      Plaintiff filed his charge within 180 days of the last act of gender discrimination to which he was subjected.

10.     Plaintiff received his Notice of Right to Sue on April 27, 2022.

11.     Plaintiff filed this lawsuit less than 90 days after the date of his Notice of Right to Sue was issued.

12.     Plaintiff's Title VII claim is timely filed.

## FACTUAL ALLEGATIONS

*Hodgson's Tenure with KSU*

13.    KSU hired Hodgson as a Trainee for the Men's Golf Team in January 2016.

14.    KSU later reclassified the "Trainee" position as an "Assistant Coach" position on July 1, 2017.

15.    While Hodgson was an Assistant Coach, the Men's Golf Team won the ASUN Conference Championship in 2016 and 2017.

16.    Hodgson successfully recruited both international and in-state students for the KSU Men's Golf Team.

17.    KSU named Hodgson the Interim Women's Golf Head Coach in late December 2020.

18.    Alicia English, KSU's Assistant Athletic Director for Revenue Enhancement, informed Hodgson that he would need to reapply for the Head Coach position when it was posted in February 2021.

19.    Hodgson served as KSU's Interim Women's Golf Head Coach from January 6, 2021, through May 31, 2021.

20.    Under Hodgson's leadership, KSU's Women's Golf team won the ASUN Conference tournament and set a new school record.

*KSU Searches for a New Women's Golf Head Coach*

21.    On or around January 20, 2021, KSU opened applications for the Women's Golf Head Coach position.

22.    KSU's Chief Operating Officer, Tamica Smith-Jones, convened a five-member selection committee to identify candidates for the Head Coach position, including herself; English; Matt Griffin, Deputy Athletics Director; Mindy Mager-Debruce, Associate Athletics Director for Administration; and Bret Cowley, Assistant Athletics Director for Compliance.

23.    When the Athletic Department met about soliciting applicants for the Women's Golf Head Coach position, English commented: "Everyone get in your best female candidates because this is a women's team and it needs a woman coach," or similar words to the same effect.

24.    Upon hearing English's comment, Human Resources Business Partner Melanie Uken stated that KSU needed to conduct a fair interview process.

25.    English responded to Uken sarcastically, suggesting she was not interested in conducting impartial interviews.

26.    KSU received 38 applications for the Head Coach position, including Hodgson's application.

27.     The search committee narrowed the pool to nine candidates, six women and three men, including Hodgson.

28.     From the list of nine candidates, the search committee further narrowed the pool to four women and two men, including Hodgson.

29.     Ultimately, five of the candidates were invited to interview in-person for the Head Coach position: three women and two men, including Hodgson.

30.     Of the five candidates, three accepted their interview invitation: Alexis Rather, a woman; Erin Thorn, a woman; and Hodgson.

*Hodgson Outperforms the Other Finalists During Interviews*

31.     The three finalists met with the Executive Team; the Women's Golf team members; the Head Coach for Men's Golf, Bryant Odom; and members of Athletics' support staff.

32.     The members of the Women's Golf team and the Athletics' support staff provided anonymous feedback on each finalist via an electronic survey.

33.     As part of the survey, the members of the Women's Golf team and the Athletics' support staff were asked whether they would recommend each candidate to be the Head Coach for Women's Golf.

34.     The Women's Golf team was also asked to rank all of the coaches against each other.

35.     The members of the Women's Golf team voted four in favor and four against hiring Rather.

36.     Two members of the Women's Golf team expressed that Rather was their top choice to be the next Head Coach; one member expressed she was her second choice; and three members expressed she was their third choice.

37.     The members of the Athletics' support staff voted five in favor and six against hiring Rather.

38.     The members of the Women's Golf team voted two in favor and five against hiring Thorne.

39.     No members of the Women's Golf team expressed that Thorne was their top choice to be the next Head Coach; four expressed that she was their second choice; and two expressed that she was their third choice.

40.     The members of the Athletics' support staff voted six in favor and four against hiring Thorne.

41.     The members of the Women's Golf team voted six in favor and two against hiring Hodgson.

42.     Four members of the Women's Golf team expressed that Hodgson was their top choice to be the next Head Coach; one member expressed that he was her second choice; and one member expressed that he was her third choice.

43.     The members of the Athletics' support staff voted ten in favor and two against hiring Hodgson.

44.     In summary, Hodgson received the most positive evaluation from the members of the Women's Golf team and the members of the Athletics' support staff.

45.     Griffin, the Deputy Athletic Director, expressed that Hodgson was his top choice to be the next Head Coach.

46.     English received the survey responses and sent them to COO Smith-Jones and Athletic Director Milton Overton.

47.     COO Smith-Jones advised AD Overton on a combination of factors and perspectives from which to consider each candidate.

### KSU Hires a Woman for the Head Coach Position

48.     Despite overwhelming support for Hodgson, KSU selected Erin Thorne as the Women's Golf Head Coach even though the survey responses had her a distant second to Hodgson.

49.     On May 17, 2021, English informed Hodgson that he was not selected for the Head Coach position even though his interview went perfectly.

50.     Afterward, Hodgson heard that English intended to hire a female for the Head Coach position.

51.     Later that evening, AD Overton texted Hodgson and asked him to breakfast the next day.

52.     At breakfast, Overton told Hodgson that he was the "best candidate," but that KSU "already has a lot of male head coaches over female sports," or similar words to the same effect.

53.     After breakfast, Hodgson reported English's and Overton's statements to HR Business Partner Uken.

54.     Uken confirmed that English had made discriminatory comments indicating favoritism toward female candidates.

55.     Uken investigated Hodgson's claims regarding Overton's statements and ultimately confirmed that Overton had made such statements.

56.     Uken told Hodgson that nothing could be done regarding the Head Coach position and suggested that he forego taking any further action on his claim.

57.     On June 3, 2021, Hodgson resigned as it would have been difficult to return to his Assistant Coach position on the men's side in light of his effort to get promoted to the Head Coach of the women's team.

*Governmental and Decisionmaker Liability*

58.    The highest official with responsibility to protect Hodgson against gender discrimination had actual or constructive knowledge of the discrimination giving rise to this complaint. Plaintiff believes that official was Milton Overton.

59.    Despite such actual or constructive knowledge, this official failed to take reasonable, prompt, remedial action as required by federal law to protect Hodgson's rights to be free from gender discrimination.

60.    At all times material to this Complaint, it was clearly established law that subjecting an employee to gender discrimination violates the Equal Protection Clause.

<u>**COUNT I**</u>
<u>**TITLE VII – GENDER DISCRIMINATION**</u>

61.    All preceding paragraphs are incorporated herein by reference.

62.    Plaintiff is an "employee" as defined by Title VII, 42 § U.S.C. § 2000e et seq.

63.    Defendant is an "employer" as defined by Title VII, 42 U.S.C. § 2000e et seq.

64.    Defendant discriminated against Plaintiff because of his gender by failing to hire him as the permanent Head Coach for the Women's Golf Team and,

instead, hiring a female candidate.

65.     Defendant's discriminatory treatment of Plaintiff violates Title VII and entitles Plaintiff to all appropriate relief provided under the statute.

66.     Defendant's actions were willful, deliberate, and intended to cause Plaintiff harm, and/or were committed with reckless disregard of the harm caused to Plaintiff and were in derogation of his federally protected rights.

67.     As a result of Defendant's conduct, Plaintiff has suffered lost wages and benefits and has suffered mental and emotional distress.

68.     Plaintiff was damaged by Defendant's actions in an amount to be proven at trial.

69.     Plaintiff is entitled to the relief set forth in the prayer for relief below.

### COUNT II
### VIOLATION OF THE EQUAL PROTECTION CLAUSE – GENDER DISCRIMINATION

70.     Plaintiff hereby realleges all preceding paragraphs of this Complaint as if each paragraph had been fully and completely restated herein.

71.     The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution entitles Plaintiff to equal protection under the laws, including equal protection with respect to gender.

72.     No compelling or other governmental interest supports the Defendant's

use of gender as the basis for employment decisions giving rise to this Complaint.

73.    To the extent any such interest existed, Defendant's use of gender classifications is not the least restrictive means by which the Board could have effectuated such interest.

74.    Defendant violated Plaintiff's rights to equal protection by subjecting him to gender discrimination. Defendant's conduct constitutes unlawful discrimination based upon gender, in violation of the Equal Protection Clause.

75.    Defendant undertook all the unlawful conduct giving rise to Plaintiff's claims while acting under color of state law.

76.    As a direct and proximate result of Defendant's violations of the Equal Protection Clause, Plaintiff has suffered damages including emotional distress, inconvenience, losses of income and benefits, humiliation, and other indignities.

77.    Defendant's unlawful conduct violated clearly established law prohibiting making employment decisions because of gender.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands a **TRIAL BY JURY** and that the following relief be granted:

a.  That this Court take jurisdiction of this matter;

b.  That process be served;

c.  That Plaintiff be awarded a declaratory judgment that Defendant violated Title VII of the Civil Rights Act, as amended, and the Equal Protection Clause;

d.  That this Court enter a permanent injunction prohibiting Defendant from engaging in unlawful employment practices in violation of the Title VII and the Equal Protection Clause;

e.  That the Court award Plaintiff back pay and front pay in an amount to be determined at the trial of this case;

f.  That the Court award compensatory damages in an amount to be determined by the trier of fact;

g.  That the Court award Plaintiff their costs in this action and reasonable attorneys' fees pursuant to 42 U.S.C. § 2000E-5(k), and other applicable laws;

h.  That the Court grant to Plaintiff the right to have a trial by jury on all issues triable to a jury; and

   i.  That the Court grant such additional relief as the Court deems proper and just.

Respectfully submitted on this 16th day of May 2022.

LEGARE, ATTWOOD & WOLFE, LLC

By:    */s/Eleanor Mixon Attwood*
        Eleanor Mixon Attwood
        Georgia Bar No. 514014
        emattwood@law-llc.com
        Marissa R. Torgerson
        Georgia Bar No. 848356
        mrtorgerson@law-llc.com

Decatur Town Center Two
125 Clairemont Avenue, Suite 380
Decatur, GA  30030
Telephone: (470) 823-4000
Facsimile: (470) 201-1212

*Attorneys for Plaintiff*